
IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF

ALASKA

( U.S. District Court, 648 Mission Street, Rm 507, Ketchikan, AK 99901     )

| | | |
|---|---|---|
| Ronald Satish Emrit, | ) | |
| Plaintiff (Pro Se) | ) | |
| | ) | **C. A. No.:** |
| v. | ) | |
| | ) | |
| National Football League, | ) | |
| Washington Redskins, | ) | |
| & Daniel Snyder | ) | |
| Defendants | ) | |
| | ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this complaint against the three defendants seeking to assess joint and several liability in which the three alleged tortfeasors would presumably move to collect contribution and indemnity from each other through the filing of cross-claims. As such, the plaintiff is alleging that all three defendants/tortfeasors have committed the tortious acts of defamation and/or the unauthorized appropriation of a trademark using the "likeness" of Native Americans/American Indians in a racist and offensive manner.

## I.) NATURE OF THE CASE

1.) Due to the serious nature of this lawsuit, the plaintiff respectfully requests that the magistrate judge and/or district judge assigned to this case allow the plaintiff to amend his complaint if and only if (iff) the magistrate judge

and/or district judge assigned to this case issues an "Order to Show Cause (OSC)" and/or a Report and Recommendation (R&R) specifying that this case should be dismissed for failure to state a claim for which relief can be granted or leading to a 12(b)(6) motion to dismiss or summary judgment motion by the opposing party after having been served with the pleadings (summons and complaint). Accordingly, the plaintiff is filing this lawsuit in the U.S. District Court of Massachusetts because of the fact that the plaintiff was born in Boston, Massachusetts, he lived in nearby Newton in his earliest formative years, attended nearby Brown University in Providence, RI from the years of 1993 to 1997, his best friend Aram Alemian lives in nearby Worcester and suffers from blepharitis and GERD and has entertained the possibility of trying to be his best friend's guardian/guardian ad litem notwithstanding the fact that the plaintiff is also currently disabled, and the plaintiff has also entertained the possibility of moving back to Massachusetts (or somewhere in New England possibly by Dartmouth College in New Hampshire where the plaintiff had a woman named Leslie from Pennsylvania that he was romantically interested in (that was in the African-American organization "doing business as" (d/b/a) Jack and Jill of America, Inc.) while he attended Brown University in 1994). GIven that the plaintiff would like to possibly move back to Massachusetts after January of 2020, the U.S. District Court of Massachusetts is vested with jurisdiction.

2.) While none of the three defendants/alleged tortfeasors are governmental or quasi-governmental agencies, the plaintiff alleges that all three of the defendants/alleged tortfeasors are committing an egregious Civil Rights violation by using a racist and offensive trademark against Native Americans/American Indians, i.e. a suspect classification of discrete and

insular minorities which has experienced invidious discriminatio within the context of American jurisprudence.

## II.) PARTIES TO THIS LITIGATION

3.) The plaintiff is an indigent and disabled resident and/or citizen of the state of Florida. He lives with his father and mother (who has Alzheimer's Disease) at the following address: 6655 38th Lane East, Sarasota, Florida 34243. He is currently visiting his sister Lisa Leahy at her address, i.e. 11207 Lincoln Avenue, Hagerstown, Maryland 21740. Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court can take judicial notice that the plaintiff attended the University of Memphis in 1997 as a graduate student trying to obtain a Master's Degree in Science (M.S.) in the field of Biology. The plaintiff lived at 4291 Lake Arbor Drive at the Wyndridge Apartments in Hickory Hill, Tennessee and worked at the Memphis Animal Shelter which was then based on Tchulahoma Drive in Memphis, Tennessee.

4.) The first defendant is "doing business as" the National Football League and its commissioner is Roger Goodell. The mailing address for the principal place of business (ppb) and/or "nerve center" for the National Football League (NFL) is the following: National Football League, 280 Park Avenue, New York, NY 10017. The commissioner of the NFL is Roger Goodell and his email address is the following: roger.goodell@nfl.com. Apparently, the Twitter address for Roger Goodell as the commissioner of the NFL is the following: @NFLCommish.

5.) The second defendant is "doing business as" (d/b/a) the Washington Redskins which is a professional football team that plays half of its scheduled games at its home field in Raljan, Maryland which is known as FedEx Field and is apparently sponsored or endorsed by the company "doing business as" (d/b/a) Federal Express with its principal place of business (ppb) and/or nerve center in Memphis, Tennessee. The mailing address for

the Redskins is the following address: Washington Redskins, 21300 Redskin Park Dr, Ashburn, VA 20147. The phone number for the headquarters of the Washington Redskins is the following: (703) 726-7000.

6.) The third and final defendant is the billionaire known as Daniel Snyder who purchased the Washington Redskins football organization from its previous owner Jack Kent Cooke, who apparently also owned the Los Angeles Lakers and was therefore in "privity of contract" with Earvin "Magic"Johnson who was drafted first overall by the Lakers from Michigan State University. The apparent mailing address for Daniel Snyder as the owner of the Washington Redskins is the following address: Attn: Daniel Snyder % Redskin Park (Practice Facility), 21300 Redskin Park Drive, Ashburn, VA 20147-6100, USA. The phone number for Daniel Snyder's front office with the Redskins is the following phone number with a Northern Virginia area code: (703) 726-7000.

## III.) JURISDICTION AND VENUE

7.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."

8.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

9.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the District of Alaska (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the four defendants.

10.)   As an Article III court, the U.S. District Court for the District of Alaska also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of federal trademark law (i.e. Lanham Act)

4

and potential civil rights violations involving Title VII of the Civil Rights Act of 1964.

    11.)   Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

12.) Because the amount in controversy exceeds $75,000 (i.e. $2,000,000,000 is greater than $75,000), this court also has jurisdiction with regards to that particular issue.

## IV.) STATEMENT OF FACTS

13.) The plaintiff argues that there is an irrebuttable presumption that he is mixed with the ancestry/blood of American Indians/Native Americans given that the plaintiff is classified as an African-American and it is well-known that most if not all African-Americans "mixed their blood" with Native Americans/American Indians during colonial times.

14.) The plaintiff is African-American because of the "1% Drop Rule" which indicates that any person who has more than one 1% drop of African slave blood in their ancestry is presumed to be an African-American as opposed to being classified as a "mulatto," "quadroon," or "octaroon."

15.) Applying this "1% Drop Rule" to the Native American community, it can also be stated with substantial certainty that any person who has more than 1% drop of Native American blood in their ancestry is presumed to be a Native American rather than being classified as a "mestizo" or some other derogatory term.

16.) Based on this irrebuttable presumption that the plaintiff is both an African-Americans and Native American/American Indian according to the application of the "1% Drop Rule," it can be stated with substantial certainty that the plaintiff has the standing, causation, and redressability to initiate a class action lawsuit against the NFL, Washington Redskins, and Daniel Snyder on behalf of the entire class of descendants of American Indians/Native Americans in accordance with Rule 23 of the Federal Rules of Civil Procedure (FRCP).

17.) Furthermore, the U.S. Department of Justice, Bureau of Indian Affairs (BIA),

and/or the U.S. Department of Interior may have a vested interest in terms of filing an amicus curiae brief to this lawsuit if it ends up in the Eleventh Circuit Court of Appeals in Atlanta, Georgia. Before this case reaches the appellate level, however, the U.S. Department of Justice, Bureau of Indian Affairs, and U.S. Department of Interior may have a vested interest in having a U.S. attorney file a "Notice of Appearance of Counsel" to represent the plaintiff after this pleading has been filed or the U.S. Department of Justice (USDOJ), Bureau of Indian Affairs (BIA), and/or U.S. Department of Interior (DOI) may want to become involved with this case by way of an impleader, interpleader, intervention, or through a permissive or mandatory joinder of a necessary and indispensable party given the argument that the U.S. Department of Justice, Bureau of Indian Affairs (BIA), and U.S. Department of Interior (DOI) have a vested interest in protecting the Civil Rights of Native Americans/American Indians as a suspect classification of discrete and insular minorities which has experienced invidious discrimination within the context of American jurisprudence.

## V.) COUNT ONE: DEFAMATION (LIBEL AND SLANDER AGAINST A CLASS OF NATIVE AMERICANS/AMERICAN INDIANS)

18.) To prove *prima facie* defamation, a plaintiff must show four things: a) a false statement purporting to be fact; b.) publication or communication of that statement to a third person; c.) fault amounting to at least negligence; and d.) damages, or some harm caused to the person or entity who is the subject of the statement.

19.) The plaintiff argues that all three defendants should be held liable for defamation because the trademark of "washington Redskins" is racist and offensive to all persons of Native American ancestry.

## VI.) COUNT TWO: TRADEMARK INFRINGEMENT IN VIOLATION OF THE LANHAM ACT/MISAPPROPRIATION OF A TRADEMARK WRONGFULLY USING THE LIKENESS OF AMERICAN

## INDIANS/NATIVE AMERICANS IN A RACIST AND OFFENSIVE MANNER

20.) **Section 32(1) of the Lanham Act** protects trademark owners against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." **15 U.S.C. § 1114(1)(a)**.

21.) To prevail on a trademark infringement claim under Section 32(1), a plaintiff must show that: (a.) its mark is valid; and (b.) the defendant's use of the contested mark is likely to cause confusion. A certificate of registration provided by the U.S. Patent and Trademark Office ("PTO") is prima facie evidence of the validity of the registered mark. **15 U.S.C. § 1057(b)**.

22.) One of the main issues in a trademark infringement claim is whether Defendant's use of the Plaintiff's trademarks is likely to cause confusion. In assessing whether a likelihood of consumer confusion exists, courts consider the following seven factors: (a.) type of mark; (b.) similarity of mark; (c.) similarity of the products the marks represent; (d.) similarity of the parties' retail outlets (trade channels) and customers; (e.) similarity of advertising media; (f.) defendant's intent; and (g.) actual confusion. The type of mark and actual confusion are the most important factors.

7

23.) There are four categories of marks, listed in order from weak to strong: a.) generic, b.) descriptive, c.) suggestive, and d.) arbitrary

24.) The plaintiff argues that all three defendants should be held liable for trademark infringement given that the American football organization "doing business as" (d/b/a) "The Washington Redskins" is using the "likeness" of all persons of Native American/American Indian ancestry without providing these persons with just compensation which can be likened to the federal, state, or local government condemning private property pursuant to the Fifth Amendment Takings Clause without providing the previous owners with just compensation (see ***Nollan v. California Coastal Commission, 483 U.S. 825 (1987), Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), Hawaii Housing Authority v. Midkiff, 467 U.S. 229 (1984), Hodel v. Irving, 481 U.S. 704 (1987), Dolan v. City of Tigard, 512 U.S. 374 (1994), Kelo v. City of New London, 545 U.S. 469 (2005)*** which are all Eminent Domain cases in the law of Property.

## VII.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy at law in the form of a judgment in the amount of $2,000,000,000 (two billion dollars) which can be apportioned to rival claimants if and only if (iff) this cause of action ends up commencing a class action lawsuit on behalf of all Native Americans/American Indians pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP). This remedy at law is appropriate when considering that the defendants have committed

defamation and a trademark violation which is racist and offensive to all Native

Americans and those mixed with the ancestry of Native Americans. The plaintiff

also asserts that the three defendants are not protected by the Federal Tort Claims

Act (FTCA) and/or the Eleventh Amendment doctrine of sovereign immunity. In

asserting this "prayer for relief," the plaintiff states, avers, and alleges the

following:

A.) The remedy at law in the form of a judgment in the amount of $2,000,000 (two

billion dollars) would be appropriately considered to be punitive, compensatory,

treble, actual, presumed, and special damages for the defendant's commission of

defamation and trademark violations in addition to perhaps a violation of civil

rights towards which private corporations (and not just government entities) must

be respectful.

B.) The remedy at law in the form of a judgment in the amount of $2,000,000,000

(two billion dollars) would also be considered to be expectation, reliance,

restitution, incidental, and consequential damages for the defendant's commission

of a material breach of contract if the court entertains the "legal fiction" that the

Washington Redskins have an implied contract with Native Americans to

compensate them for the use of their "likeness" in the same manner that

African-Americans argue the "legal fiction" that slavery reparations are

appropriate based on the "40 Acres and a Mule" argument which is not argued down the proverbial "slippery slope."

C.) The plaintiff is also requesting the equitable remedy of an injunction or specific performance mandating that the Washington Redskins football organization change their trademark/name of organization if and only if (iff) the Washington Redskins are still a member of the National Football League (NFL) after this litigation which could be perceived as an in personam, in rem, or quasi in rem action leading to the formation of a receivership, constructive trust, blind trust, or escrow in which the intended, designated, or incidental beneficiaries are persons in the class of Native Americans/American Indians.

Respectfully submitted,

*Ronald Satish Emrit*

Ronald Satish Emrit

6655 38th Lane East

Sarasota, FL 34243

(301)537-8471

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com